**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:23-CV-00105-JHM-HBB**

**PRESTON WRIGHT**                                                  **PETITIONER**

**VS.**

**KEVIN MAZZA, WARDEN**                                          **RESPONDENT**

**FINDINGS OF FACT, CONCLUSIONS OF LAW**
**AND RECOMMENDATION**

## I.      BACKGROUND

Petitioner Preston Wright filed, *pro se*, his Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (DN 10).[1]  Respondent Kevin Mazza filed a response to Lynch's amended habeas petition (DN 20).  Wright filed a reply in support of his amended habeas petition (DN 27).  For the reasons set forth below, the undersigned **RECOMMENDS** that Wright's habeas petition (DN 1) and amended habeas petition (DN 10) be **DENIED** and **DISMISSED**.[2]  Additionally, the undersigned **DOES NOT RECOMMEND** issuance of a Certificate of Appealability for the claims set forth in Wright's amended habeas petition.

## II.      FINDINGS OF FACT

### A.  Proceedings Before the Ohio Circuit Court

Wright was charged with one count of sodomizing his then-girlfriend's five-year-old daughter Tammy.  *Wright v. Commonwealth*, 590 S.W.3d 255, 257 (Ky. 2022) ("*Wright I*").  Following a trial before the Circuit Court in Barren County, Kentucky, ("Barren Circuit Court"),

---

1 With leave of Court (DN 7, 9), Wright filed the Amended Petition for Writ of Habeas Corpus (DN 10), which supersedes the original petition for writ of habeas corpus (DN 1).

2 The District Judge referred this matter to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(A) and (B), "for rulings on all non-dispositive motions; for appropriate hearings, if necessary; and for findings of fact and recommendations on any dispositive matter" (DN 13 PageID # 85).

the jury found Wright guilty of sodomy, first-degree, in a continuing course of conduct, victim under 12 years of age (DN 20-2 PageID # 128-30). *Id.* The Barren Circuit Court sentenced Wright to forty (40) years (*Id.*). *Id.* As a matter of right, Wright appealed his conviction and resulting sentence to the Kentucky Supreme Court. *Id.*

**B. Direct Appeal**

Wright raised the following issues: (1) a juror's failure to disclose that she went to school with Wright's sister-in-law during *voir dire* entitled Wright to a new trial; (2) the trial court committed reversible error when it dismissed juror Combs as the alternate instead of declaring a mistrial; and (3) the trial court coerced the jury into reaching a verdict by issuing two *Allen*[3] charges. *Id.* As the issues raised on appeal were limited to the circumstances surrounding juror Combs' dismissal and the jury's deliberations, the Kentucky Supreme Court did not discuss the evidence concerning details of the charged crime. *Id.* Instead, it provided the following factual and procedural information:

**A. Juror C's Dismissal**

The first person to testify at trial was Tammy's biological father. When his testimony concluded, the court recessed for lunch. After lunch, the defense reported that several people made allegations against Juror C during the lunch break. They alleged that Juror C knew Wright; that she sat with Tammy's father and a group of people, presumably his family, during the lunch recess; and that she hugged Tammy's father on the courthouse steps before the court came back from recess. Therefore, out of the presence of the rest of the jury, the court discussed the allegations with Juror C, the Commonwealth, and defense counsel.

First, when asked whether she knew Wright, Juror C said she did not, but she did know his sister-in-law. His sister-in-law was a grade ahead of her in school, but Juror C said she did not "know know" her. She stated she saw her around town occasionally but could not recall the last time she spoke to her. The trial court then asked why she did not disclose this information during voir dire. She responded

---

3 *Allen v. United States*, 164 U.S. 492 (1896).

that she was going to but counsel moved on to their next question before she could.

The court went on to ask Juror C if she sat with Tammy's father and his family at lunch, and she admitted she did sit at the same table. She explained that she was sitting by herself in a Subway Restaurant[4] near the courthouse at a table where three small tables were pushed together. Tammy's father and about six other people asked if they could sit there, and she told them they could. However, Juror C maintained that she did not say anything else to them; she simply finished eating in silence and left.

Finally, Juror C denied hugging Tammy's father on the courthouse steps. She said she was standing on the steps and he walked past her, hugged a woman Juror C did not know, and got into his car and left.

Following this, the trial court sent Juror C back to the jury room and had a discussion with counsel about how they wished to proceed.[5] The trial court stated that it did not believe Juror C's knowledge of Wright's sister-in-law as she described it would have qualified her to be struck for cause. Defense counsel said twice during the discussion that he "agree[d] with that 110%," and that "none of that worr[ied] [him] at all."

However, defense counsel moved for a mistrial based on the lunchtime allegations. First, he was concerned that Juror C purportedly talked to a testifying witness, which would have been inappropriate in and of itself. He also argued it was therefore possible that she tainted the other members of the jury with information she gained during that conversation. The Commonwealth responded that a mistrial was the most severe remedy available and that it would be better to strike her as the alternate and continue the trial with twelve jurors.[6]

Ultimately, the trial court accepted the Commonwealth's position and immediately dismissed Juror C. Then, in order to address the defense's concern about her tainting the rest of the jury, the court asked the remaining members of the jury if any of them received any improper information from Juror C. The members responded they did not, and the trial proceeded.

---

4 "The trial court indicated that this Subway was the only place one could 'go and eat in an hour and get back [to the courthouse].'" *Wright v. Commonwealth*, 590 S.W.3d 255, 257 n.2 (Ky. 2019) ("*Wright I*").

5 "Defense counsel did not request that the court question the people who made the allegations against Juror C, and the trial court did not do so *sua sponte*." *Id.* at 258 n.3.

6 "The trial court empaneled thirteen jurors prior to trial." *Id.* at 258 n.4.

## B.  Jury Deliberations

On the second day of trial the jury began its deliberations at about one o'clock.  An hour later the jury requested, and was permitted, to see the video of Tammy's testimony again.  The jury went back in to deliberate at 2:38 PM.

At 3 PM the foreperson told the court that several jurors were "not comfortable making a decision yea or nay, guilty or not guilty, based on the evidence."  The judge admitted he had never encountered that situation before and wanted to talk to counsel about their preferred course of action.   The judge suggested reading through the instructions again, telling the jury to think about those instructions, and to make it clear that each individual juror had a duty to either vote guilty or not guilty; that they could not abstain from voting altogether.  The Commonwealth agreed, but the defense argued that the only thing they could do was to bring the jury out, read the *Allen* charge to them and send them back in, or declare a mistrial.  The judge replied that an *Allen* charge is read to a deadlocked jury, and that was not what they had.  They simply had jurors that were unwilling to vote either way.  The judge further noted that juries come out with questions all the time about a myriad of things, and the court has options beyond reading them an *Allen* charge.

So, at 3:08 PM the court explained to the jury that they each had an individual obligation to vote guilty or not guilty based on the instructions and the evidence.  He told them that if they reached a point where everyone voted and it was not unanimous, then they could let the court know and they would deal with that issue.  He then sent them back in to deliberate.

At 3:24 PM the foreperson reported that everyone had voted, but they were now deadlocked.  The judge read them the *Allen* charge verbatim and sent them back in to deliberate at 3:26 PM.

At 3:46 PM the foreperson informed the court that they had another issue.  Anticipating that they were still deadlocked, the court asked counsel what they wanted to do if that was indeed the case.  The Commonwealth suggested asking the foreperson if he thought further deliberations would be helpful, while the defense suggested declaring a mistrial.  The court proposed telling the foreperson the court's only two options were to either read the *Allen* charge again

and continue deliberations or declare a mistrial and get the foreperson's opinion. The defense agreed.[7]

The court therefore asked the foreperson if he thought there would be any utility in having them deliberate further. The foreperson said that if the court would have asked him that an hour ago, he would have said no. But a few jurors had changed their opinion, while a couple of jurors were holding firm. The trial court then brought the jury out and explained that he was not trying to "twist their arm," but that he was required to read the *Allen* charge again because they were still deadlocked. He read it again verbatim and said "I'll ask you to return to the jury room and continue your deliberations. I'm not asking for a specific amount of time. If and when you come to a decision one way or the other or convince yourselves you're at an intractable spot, then just let us know and we'll go from there, okay?" The jury was sent back in to deliberate at 3:57 PM.

At 4:58 PM, the foreperson came out and asked if the judge could provide a definition of "reasonable doubt." The judge explained that he could not, that what constitutes reasonable doubt is a judgment call for each individual juror. The foreperson went back to deliver the court's answer at 5 PM.

At 5:11 PM, after a total of four hours of deliberation, the jury came back with a guilty verdict.

*Id.* at 257-59.

The Kentucky Supreme Court found Wright was not entitled to a new trial based on the first issue because it was not properly preserved for appellate review, and it would be hard-pressed to find reversible error even if the issue had been preserved. *Id.* at 259-60. As to the second issue, the Kentucky Supreme Court determined that the trial court did not abuse its discretion by dismissing juror C and denying Wright's motion for a mistrial. *Id.* at 260-61. As to the third issue, the Kentucky Supreme Court concluded that the trial court giving the jury two *Allen* charges did not coerce the jury into reaching a verdict. *Id.* at 262-65. The Kentucky Supreme Court issued its opinion on December 19, 2019. *Id.* at 255.

---

7 "For the sake of clarity: the defense only expressly agreed to presenting those two options to the foreperson. He did not agree to reading the jury the Allen charge at that time." *Id.* at 259 n.5.

C. **State Postconviction Relief Proceedings**

On March 30, 2020, Wright filed, *pro se*, a motion to vacate, set aside or correct sentence pursuant to Ky. R. Crim. P. 11.42 ("Rule 11.42 motion"), and a supporting memorandum (DN 20-2 PageID # 221-55). He raised the following claims before the Barren Circuit Court: (1) Wright received ineffective assistance of counsel when trial counsel failed to object to the jury instructions and appellate counsel failed to address the issue on appeal; (2) Wright received ineffective assistance of counsel when trial counsel failed to object to improper communication with the jury and appellate counsel failed to raise the issue on direct appeal; (3) Wright received ineffective assistance of counsel when trial counsel failed to put on expert witness testimony regarding the lack of any psychological issues with the alleged victim; and (4) Wright received ineffective assistance of counsel when trial counsel failed to put on expert witness testimony regarding improper interview techniques employed on the alleged victim (*Id.* at 229-55).

In an order entered on September 24, 2020, the Barren Circuit Court denied Wright's Rule 11.42 motion and his request for an evidentiary hearing (DN 20-2 PageID # 280-300). The trial court indicated that Wright failed to demonstrate that counsel provided deficient assistance and that Wright was prejudiced as a result (*Id.* at PageID # 280-99) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

Wright, through appointed counsel, pursued an appeal before the Kentucky Court of Appeals (DN 20-2 PageID # 301-14). His collateral attack brief raised the following claims: (1) trial counsel failed to object to improper communication with the jury foreperson outside the presence of the jury; and (2) appellate counsel failed to raise the issue of improper jury communication on direct appeal (*Id.* at 303, 308-13).

As the two issues raised by Wright were limited to the circumstances surrounding the jury's deliberations, the Kentucky Court of Appeals relied on pertinent findings previously made by the Kentucky Supreme Court on direct appeal. *Wright v. Commonwealth*, No. 2020-CA-1581-MR, 2023 WL 323886, at *1-2 (Ky. Ct. App. Jan. 20, 2023) ("*Wright II*"). Following a discussion of the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 694-95 (1984), the Kentucky Court of Appeals concluded although the trial judge's exchanges with the jury foreperson violated Ky. R. Crim. P. 9.74, the exchanges revealed no intentional or inadvertent coercion. *Id.* at *3-4. Accordingly, Wright had not demonstrated the prejudice required to prevail on his first claim of ineffective assistance of trial counsel. *Id.* Concerning the second claim, as the improper communication between the trial judge and the jury foreperson did not constitute reversible error, appellate counsel's failure to include the issue in the direct appeal brief did not rise to the level of ineffective assistance of appellate counsel. *Id.* On January 20, 2023, the Kentucky Court of Appeals issued its opinion affirming the trial court's order that denied Wright's Rule 11.42 motion. *Id.* at *1, *5.

Wright then filed a motion seeking discretionary review (DN 20-2 PageID # 372). In an order entered June 7, 2023, the Kentucky Supreme Court denied Wright's motion (*Id.*).

### D.  The Habeas Petition and Amended Petition

On August 9, 2023, Wright filed, *pro se*, his initial habeas petition on a Court-supplied § 2241 petition form (DN 1). But his claims challenged the validity of his state-court conviction (*Id.* at PageID # 3-4).[8] Consequently, the Court advised Wright that his § 2241 petition would be

---

8 Ground One asserts that Wright's Sixth and Fourteenth Amendment rights to a fair trial were violated when the trial judge communicated with the jury foreperson outside the presence of the rest of the jury (DN 1 PageID # 3-4). Ground Two alleges that Wright's appellate counsel rendered ineffective assistance when he failed to make an argument that the trial judge improperly communicated with the jury foreperson outside the presence of the rest of the jury (*Id.* at PageID # 4).

recharacterized as a petition filed under § 2254 (DN 7 PageID # 23-24) (citing *Castro v. United States*, 540 U.S. 375, 383 (2003); *Martin v. Overton*, 391 F.3d 710, 713 (6th Cir. 2004)). Therefore, the Court Ordered as follows:

> (1) Within 30 days from entry of this Order, [Wright] shall notify this Court whether he wishes to withdraw his petition or to amend it.
>
> (2) If [Wright] wishes to amend his petition, he must, within the 30-day time limit, fill out a Court-supplied § 2254 form and return it to the Court.
>
> (3) [Wright's] failure to respond to this Memorandum and Order will result in recharacterization of the initiating document as a § 2254 petition for writ of habeas corpus.

(*Id.* at p. 25). Wright subsequently moved for, and the Court granted, an extension of time to file an amended § 2254 petition (DN 8, 9).

On January 25, 2024, Wright filed his amended habeas petition, on a Court-supplied § 2254 form, and a memorandum in support (DN 10, 10-1). Wright raises the following arguments in his memorandum: (1) trial counsel, Johnny Bell, provided ineffective assistance when he failed to obtain expert witness testimony regarding the lack of any psychological issues with the alleged victim; (2) trial counsel, Johnny Bell, provided ineffective assistance when he failed to put on expert witness testimony regarding the improper interview techniques employed on the alleged victim; (3) appellate counsel failed to argue any of the above factual evidence on direct appeal, the Barren Circuit Court failed to appoint counsel to represent Wright on his Rule 11.42 motion, and appointed counsel made mistakes in the collateral attack appeal; and (4) trial counsel, Johnny Bell, provided ineffective assistance when he failed to object to the trial judge's improper communication with the jury, and appellate counsel, Julia Pearson, provided ineffective assistance

when she failed to raise the issue on direct appeal (DN 10-1 PageID # 52-74).[9]

Before addressing the merits of Wright's claims, Mazza asserts that all of the claims are time-barred (DN 20 PageID # 103-09) (citing DN 10).  In support of this position, Mazza suggests that the statutory tolling provision in 28 U.S.C. § 2244(d)(2) should not apply to Wright's motion for discretionary review to the Kentucky Supreme Court because litigants are not required to move for discretionary review in collateral attack proceedings in order to exhaust all available state court remedies (*Id.*).  Alternatively, Mazza contends that federal review of Wright's first three claims is barred because he did not raise them before a Kentucky appellate court (*Id.* at PageID # 110-14).  Mazza also contends that the Kentucky Court of Appeals reasonably determined: (1) Wright's trial counsel was not ineffective for failing to object to the trial court's communications with the jury foreperson; and (2) Wright's appellate counsel was not ineffective for failing to raise the matter (*Id.* at PageID # 114-25).

In reply, Wright argues that his claims are timely because his motion for discretionary review satisfied the requirements of the tolling provision in § 2244(d)(2) (DN 27 PageID # 640-42) (citing *Vasquez v. Adams*, No. 3:19-cv-BJB-HBB, 2021 U.S. Dist. LEXIS 122169, at *5-11 (W.D. Ky. June 30, 2021)).  Wright responds to Mazza's procedural default argument by asserting that the failure to consider these three claims will result in a fundamental miscarriage of justice as he is actually innocent (DN 27 PageID # 642-53) (citing *Schlup v. Delo*, 513 U.S. 298, 327-31)).

### III.    CONCLUSIONS OF LAW

#### A.  Standard of Review

Because Wright filed his habeas petition on August 9, 2023, review of the state court decisions is governed by Chapter 153 of the Antiterrorism and Effective Death Penalty Act of

---

9 Wright's amended habeas petition does not set forth his claims (DN 10 PageID # 35-40).  It purportedly provides supporting facts (*Id.*).

1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA") (DN 1). *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Under AEDPA, as to each claim asserted by Wright, the Court must first determine whether it alleges that a federal constitutional right has been violated. *Williams v. Taylor*, 529 U.S. 362, 367 (2000). If the answer is in the affirmative and the state court adjudicated the federal constitutional claim on its merits, then this Court must employ the standard of review set forth in 28 U.S.C. § 2254(d) to determine whether to grant the petition. *Id.* at 367, 402-03, 412-13.

As amended, by Chapter 153 of AEDPA, § 2254(d) provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

When the Court conducts a review under either clause of 28 U.S.C. § 2254(d)(1), it must look only to the clearly established precedent of the United States Supreme Court. *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003). In *Andrade*, the Supreme Court explained:

> Section 2254(d)(1)'s "clearly established" phrase "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In other words, "clearly established Federal law" under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. *See id.*, at 405, 413, 120 S.Ct. 1495; *Bell v. Cone*, 535 U.S. 685, 698, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). In most situations, the task of

> determining what we have clearly established will be straightforward.

*Id.* at 71-72.

The phrase "contrary to" means "'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citing Webster's Third New International Dictionary 495 (1976)). Thus, under the "contrary to" clause of § 2254(d)(1), the Court may grant the writ if: (a) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (b) the state court decides a case differently than the Supreme Court "has on a set of materially indistinguishable facts." *Id.* at 412-13.

Under the "unreasonable application" clause of § 2254(d)(1), the Court may grant the writ if the state court identifies the correct governing legal rule from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 407-08, 413. When the Court makes the "unreasonable application" inquiry it "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. The state court's application of clearly established federal law must be more than simply erroneous or incorrect, it must be objectively unreasonable. *Id.* at 409-11. Consequently, "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

A petitioner may obtain relief under § 2254(d)(2) "only by showing" the state court "conclusion to be 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) ("*Miller-El II*")

11

(quoting 28 U.S.C. § 2254(d)(2)).[10]  This "unreasonable determination" standard in § 2254(d)(2) applies to state-court decisions and "the granting of habeas relief." *Miller-El v. Cockrell*, 537 U.S. 322, 341-42 (2003) ("*Miller-El I*").  By contrast, the "clear and convincing" evidence standard found in § 2254(e)(1) "pertains only to state-court determinations of factual issues, rather than decisions." *Id.* at 342.  Thus, in making an assessment under § 2254(d)(2), the Court presumes the state court's factual findings to be sound unless the petitioner rebuts the "presumption of correctness by clear and convincing evidence." *See Miller-El II*, 545 U.S. at 240 (quoting § 2254(e)(1)).[11]  The "unreasonable determination" standard in § 2254(d)(2) "is demanding but not insatiable; as we said the last time this case was here, '[d]eference does not by definition preclude relief.'" *Id.* (quoting *Miller-El I*, 537 U.S. at 340).

## B.  **Time Bar**

### 1.  *Arguments of the Parties*

Mazza argues that Wright's claims in the amended petition are time barred because "habeas petitioners are not entitled to statutory tolling for the time spent seeking discretionary review of their collateral-attack appeals in a state that has excepted the discretionary-review process from its exhaustion requirements" (DN 20 PageID # 103-04).  In reply, Wright cites a previous report and recommendation where the undersigned found no merit to this "exact argument" because no one disputed that the "motion for discretionary review to the Kentucky Supreme Court was a properly

---

10 The Supreme Court has instructed, "[w]e may not characterize . . . state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 576 U.S. 305, 313-14 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).  Moreover, "§ 2254(d)(2) requires that we accord the state trial court substantial deference." *Id.* at 314.  This means that if "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's [factual] determination.'" *Wood*, 558 U.S. at 301 (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)).

11 The Supreme Court has yet to define the "precise relationship between § 2254(d)(2) and § 2254(e)(1)[.]" *Burt v. Titlow*, 571 U.S. 12, 18 (2013).  Further, it has "explicitly left open the question whether § 2254(e)(1) applies in every case presenting a challenge under §2254(d)(2)." *Wood*, 558 U.S. at 300.

filed" (DN 27 PageID # 641-42) (citing *Vasquez v. Adams*, 2020 U.S. Dist. LEXIS 256646, at *6-11, 2020 WL 10241737, at *3-5 (W.D. Ky. Aug. 10, 2020) ("*Vasquez I*")).

### 2. *Previously Raised Argument*

The undersigned will begin by observing that another Kentucky state warden—Brad Adams— previously raised this time bar argument. *See Vasquez I*, 2020 WL 10241737, at *3-5. In that case, the trial court denied Vasquez's Rule 11.42 motion, the Kentucky Court of Appeals affirmed, and Vasquez applied for discretionary review by the Kentucky Supreme Court. *Id.* at *1. Warden Adams cited several cases in support of his argument that the tolling provision in § 2244(d)(2) should not be applied to Vasquez's motion for discretionary review to the Kentucky Supreme Court because Ky. R. Crim. 12.05 indicates such a motion is not required for exhaustion of a claim of error. *Id.* at *3-5. The undersigned found Warden Adam's "argument unnecessarily circuitous when a more direct path is readily apparent." *Id.* at *5. Relying on the language in § 2244(d)(2), the undersigned reasoned because there was no dispute that Vasquez's motion for discretionary review to the Kentucky Supreme Court was properly filed, the one-year statute of limitations in § 2244(d)(1) remained tolled while his motion was pending. *Id.* As Kentucky's exhaustion procedures had no effect on the plain language of § 2244(d)(2), the undersigned found that Vasquez's petition was timely filed. *Id.*

District Judge Benjamin Beaton reviewed Warden Adams' objection *de novo*. *Vasquez v. Adams*, No. 3:19-cv-756-BJB-HBB, 2021 WL 2697543, at *1 (W.D. Ky. June 30, 2021) ("*Vasquez II*"). District Judge Beaton held that "Section 2244(d)(2) accordingly tolled the limitations period throughout the pendency of Vasquez's postconviction-relief motion in state court and rendered the habeas petition timely filed." *Id.* at *3.

In *Vasquez I* and *Vasquez II*, Adams' argument relied on Ky. R. Crim. P. 12.05 which was subsequently deleted by Order 2022-49, effective January 1, 2023. Mazza's argument relies on Rule 47 of the Kentucky Rules of Appellate Procedure ("Ky. R. App. P.") which was adopted effective January 1, 2023. The language in both rules is identical with the exception of the final sentence which

is not relevant to the issue before the Court.[12]  As this case is assigned to a different District Judge, the undersigned will address Mazza's argument *de novo*.

### 3.  *Procedural History*

In Wright's criminal case before the Kentucky state courts, the Barren County Circuit Court entered the judgment of conviction on April 18, 2018 (DN 20-2 PageID # 128-30).  Wright pursued a direct appeal before the Kentucky Supreme Court as a matter of right.  It subsequently affirmed Wright's conviction (*Id.* at 257, 265).

As Wright exhausted the direct appeal process in the Kentucky state courts but did not file a petition for writ of certiorari with the Supreme Court of the United States, conclusion of his direct appeal under § 2244(d)(1)(A) occurred when the time for filing the petition expired.[13]  *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); *Jimenez v. Quarterman*, 555 U.S. 113, 119-21 (2009); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000) (indicating that one-year period of limitation in § 2244(d)(1)(A) does not begin to run until the time expires for filing a petition for writ of certiorari).[14]  The Kentucky Supreme Court rendered its opinion on Thursday, December 19, 2019 (*Id.* at PageID # 202).[15]  Thus, conclusion of Wright's direct appeal occurred 90 days later, on

---

12 In Ky. R. Crim. P. 12.05 the final sentence reads, "[f]inality of the opinion for all claims of error is governed by CR 76.30(2)."  In Ky. R. App. P. 47 the last sentence reads, "[f]inality of the opinion for all claims of error is governed by RAP 40(G)."

13 Mazza cites *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) and 28 U.S.C. § 2244(d)(1)(A) in support of his mistaken belief that petitioners are entitled to statutory tolling while they exhaust available state remedies on direct appeal which often includes filing an application for discretionary review to the state supreme court (DN 20 PageID # 107).  To the contrary, § 2244(d)(1)(A) expressly indicates that the one-year statute of limitations begins to run from the latest of "[t]he date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]"  *Gonzalez* explains when a state court judgment became final under each prong in the text of § 2244(d)(1)(A).  *Id.*  In *Gonzalez*, the Supreme Court held as he did not appeal to the state's highest court, his judgment became final when his time for doing so expired.  *Id.*

14 The rules of the United States Supreme Court provide guidance in ascertaining when Wright's time to file a petition expired.  *See Giles v. Beckstrom*, 826 F.3d 321, 323 (6th Cir. 2016) (quoting 28 U.S.C. § 2101(d)).  Rule 13.1 of the Rules of the Supreme Court of the United States indicates that a petition for writ of certiorari to review a State court judgment "is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment."  Notably, Rule 13.3 directs that "[t]he time to file a petition for writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice)."

15 The Sixth Circuit has held that "the date of the entry of the judgment or order" in Supreme Court Rule 13.3 refers

Wednesday, March 18, 2020. *See Bronaugh*, 235 F.3d at 283. This means that Wright's one-year period of limitation under AEDPA began to run on Thursday, March 19, 2020. 28 U.S.C. § 2244(d)(1).

But the statute of limitations for a federal habeas petition is tolled during the pendency of any "*properly filed application* for State post-conviction or other collateral review with respect to the pertinent judgment[.]". 28 U.S.C. § 2244(d)(2) (emphasis added). Wright properly filed his Rule 11.42 motion and supporting memorandum with the Barren Circuit Court on Monday, March 30, 2020—354 days before the federal statute of limitations expired (DN 20-2 PageID # 221-23, 224-56). The Barren Circuit Court denied the Rule 11.42 motion (*Id.* at PageID # 280). The Kentucky Court of Appeals affirmed the decision on January 20, 2023. *Wright II*, 2023 WL 323886, at *1. Wright then properly filed a motion for discretionary review to the Kentucky Supreme Court—a motion allowed by Ky. R. App. P. 44. It was denied on June 7, 2023 (DN 20-2 PageID # 372).

Wright placed his initial habeas petition in the prison mailing system 55 days later, on August 4, 2023, and the Clerk of the Court filed it 5 days later, on August 9, 2023 (DN 1 PageID # 9). But Wright filed his habeas petition on the wrong form, and with leave of Court, he was permitted to file an amended habeas petition on a Court-supplied § 2255 form (DN 7, 9). Wright placed his amended habeas petition in the prison mailing system on January 18, 2024, which is 232 days after the Kentucky Supreme Court denied his motion for discretionary review, and the Clerk of the Court filed it 7 days later, on January 25, 2024 (DN 10 PageID # 45).

---

to the date on which the Kentucky Supreme Court issued its opinion and order affirming a defendant's conviction, not 21 days later when the opinion becomes "final" under Ky. R. Civ. P. 76.30(2)(a). *Giles*, 826 F.3d at 323-25.

### 4.  *Mazza's Detour*

Mazza contends that Wright's amended habeas petition (DN 10) is untimely because the statute of limitations for federal habeas review resumed on Friday, January 20, 2023—the date the Kentucky Court of Appeals affirmed the Barren Circuit Court's decision.  Mazza argues because Wright did not need to file for discretionary review with the Kentucky Supreme Court in order to exhaust his available state remedies, Wright is not entitled to "statutory tolling" while his motion for discretionary review was pending before the Kentucky Supreme Court.  If Mazza is correct, Wright's amended petition is late by 9 days because he placed it in the prison mailing system 363 days after the Kentucky Court of Appeals rendered its decision.  If Mazza is wrong, the amended petition is on time with 122 days to spare.  For the reasons that follow, Mazza is wrong.  Wright's amended petition is timely.

The answer to this issue is not hard to find.  The tolling provision that applies to AEDPA's one-year statute of limitations reads:

> The time during which a *properly filed application for State* post-conviction or other collateral review with respect to the pertinent judgment or claim *is pending* shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2) (emphasis added).[16]  In an attempt to circumvent this clear directive, Mazza leads the Court on a detour of mostly unrelated case law.

---

16 The Supreme Court has explained:

> [A]n application is "*properly* filed" when its delivery and acceptance are in compliance with the applicable state laws and rules governing filings.  These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. . . But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar.

*Artuz v. Bennett*, 531 U.S. 4, 8-9 (2000).

### a. Lawrence v. Florida

The first stop on Mazza's detour is *Lawrence v. Florida*, 549 U.S. 327 (2007).  It held that § 2244(d)(2) does not toll the one-year limitations period during the pendency of a certiorari petition filed before the United States Supreme Court.  *Id.* at 331-32, 337.  Mazza encourages this Court to "recognize that the reasoning in *Lawrence* applies to motions for discretionary review of collateral attacks whenever states waive those motions for exhaustion purposes" (DN 20 PageID # 107).  But there is nothing in *Lawrence* to justify Mazza's proposed extension.  The touchstone of *Lawrence* is federalism.  The Supreme Court's opinion addresses the distinction between state and federal review procedures, not an individual state's exhaustion requirements.  In pertinent part it states:

> Read naturally, the text of [§ 2244(d)(2)] must mean that the statute of limitations is tolled only while state courts review the application. As we stated in *Carey v. Saffold*, 536 U.S. 214, 220, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002) (internal quotation marks omitted), a state postconviction application "remains pending" "until the application has achieved final resolution through the State's postconviction procedures."  This Court is not a part of a "State's post-conviction procedures."  State review ends when the state courts have finally resolved an application for state postconviction relief.  After the State's highest court has issued its mandate or denied review, no other state avenues for relief remain open.  And an application for state postconviction review no longer exists.  All that remains is a separate certiorari petition pending before a *federal* court.  The application for state postconviction review is therefore not "pending" after the state court's postconviction review is complete, and § 2244(d)(2) does not toll the 1–year limitations period during the pendency of a petition for certiorari.

*Lawrence*, 549 U.S. at 332 (emphasis original).

### b. Ky. R. App. P. 47 and Adams v. Holland

The next stop on Mazza's detour is Ky. R. App. P. 47 and *Adams v. Holland*, 330 F.3d 398 (6th Cir. 2003) which addresses application of Tennessee Supreme Court Rule 39.  By way of

background, the Supreme Court has held that if discretionary review is an "available" procedure for fairly presenting a claim under state law, a state prisoner is "required" to fairly present his claims in a petition for discretionary review to the state supreme court in order to satisfy the exhaustion requirement in 28 U.S.C. § 2254(c). *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (2012). However, the *O'Sullivan* Court indicated "that nothing in our decision today requires the exhaustion of any specific state remedy when a State has provided that that remedy is unavailable." *Id.* at 847. Thus, *O'Sullivan* explicitly excepted from its holding cases in which a state has renounced state supreme court review as an "available state remedy." *Id.*

To the extent that Mazza asserts Ky. R. App. P. 47 and Tenn. Sup. Ct. R. 39 are similar, the undersigned agrees. Essentially, Ky. R. App. P. 47 and Tenn. Sup. Ct. R. 39 exempt state post-conviction relief litigants from having to file a motion for discretionary review to the state supreme court in order to exhaust all available state remedies regarding their claims.[17]

Moving on to *Adams*. The Sixth Circuit applied Tenn. Sup. Ct. R. 39 in determining whether the petitioner's Confrontation Clause claim was procedurally defaulted because it was not

---

17 The first two sentences in Ky. R. App. P. 47 read:

> In all . . . post-conviction relief matters a litigant shall not be required to petition for rehearing or to file a motion for discretionary review to either the Kentucky Court of Appeals or Kentucky Supreme Court following and adverse decision of either the circuit court or Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when the claim has been presented to the appellate court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies available for that claim.

Similarly, the first two sentences in Tenn. Sup. Ct. R. 39 read:

> In all appeals from criminal convictions or post-conviction relief matters from and after July 1, 1967, a litigant shall not be required to petition for rehearing or to file an application for permission to appeal to the Supreme Court of Tennessee following an adverse decision of the Court of Criminal Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when the claim has been presented to the Court of Criminal Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies available for that claim.

specifically mentioned in the application for discretionary review to the Tennessee Supreme Court. *Adams*, 330 F.3d at 400-05.

Mazza incorrectly asserts that *Adams* held rules such as Ky. R. App. P. 47 and Tenn. Sup. Ct. R. 39 "effectively render motions for discretionary review 'unavailable' to habeas petitioners" (DN 20 PageID # 108). *Adam*'s discussion—indicating that Tenn. Sup. Ct. R. 39 rendered Tennessee Supreme Court review "unavailable" as an antecedent for habeas purposes—is complicated because it involves eschewing a "hypertechnical interpretation" of the word "unavailable" utilized by the appellee Holland. *Id.* at 400-03. The Sixth Circuit explained that when a rule, such as Tenn. Sup. Ct. R. 39, takes remedies outside the normal criminal review process, "those remedies become 'extraordinary:' technically available to the litigant but not required to be exhausted." *Id.* at 403. Moreover, Mazza's argument turns a blind eye to the third sentence in Ky. R. App. P. 47 which reads:

> If rehearing or discretionary review is sought on less than all of the claims of error presented on appeal, the litigant, nevertheless, shall be deemed to have exhausted all available state remedies respecting the claim(s) of error for which rehearing or discretionary review is not sought.

When this and the prior two sentences in Ky. R. App. P. 47 are read together, they take motions for discretionary review outside the normal criminal review process, and that remedy becomes extraordinary, meaning it is technically available to the litigant but not required to be exhausted. Put simply, under Ky. R. App. P. 47 post-conviction relief litigants may file a motion for discretionary review to the Kentucky Supreme Court, but they are "not required to" do so in order to exhaust all available state remedies concerning their claims. Consequently, Mazza's assertion is premised on a failure to grasp the meaning of the word "unavailable" as it is used in *Adams* and *O'Sullivan*, and instead dwells upon an erroneous hypertechnical interpretation of that term.

Next, Mazza reasons because discretionary review motions are "unavailable" for habeas purposes, such motions are not "pending" while petitioners utilize that remedy and, by extension, petitioners are not entitled to tolling under § 2244(d)(2) (DN 20 PageID # 108). Again, Mazza's reasoning is premised on a failure to grasp the meaning of the word "unavailable" as it is used in *Adams*. For the reasons set forth in the preceding paragraphs, discretionary review motions are technically available to post-conviction relief litigants but not required to exhaust all available state remedies. Moreover, the Supreme Court has indicated that a properly filed application for state post-conviction relief remains "pending" while the litigant appeals the trial court's decision and seeks state supreme court review of the appellate court's judgment. *Carey v. Saffold*, 536 U.S. 214, 219-21 (2002). *Carey* says nothing about limiting tolling under § 2244(d)(2) to remedies required by a state's exhaustion requirements. *Id.* Further, as explained above, there is nothing in *Lawrence* that justifies Mazza's reasoning. As Ky. R. App. P. 47 makes discretionary review motions technically available to post-conviction relief litigants, Wright's properly filed application remained "pending" until the Kentucky Supreme Court denied his motion for discretionary review on June 7, 2023, thereby achieving a final resolution through Kentucky's post-conviction procedures. *See Id.* at 220.

### 5. *Timely Filed*

In sum, Mazza's argument is unnecessarily circuitous when a more direct path is readily apparent. The language of § 2244(d)(2) is clear and there is no dispute that Wright's motion for discretionary review to the Kentucky Supreme Court was properly filed. The statute and the holding in *Carey* require the analysis to stop there. Wright is entitled to a tolling of the one-year statute of limitations in § 2244(d)(1) while his properly filed motion for discretionary review was pending before the Kentucky Supreme Court. Kentucky's exhaustion procedures in Ky. R. App.

P. 47 have no effect on the plain language of 2244(d)(2). Consequently, Wright's amended petition was timely filed, and the claims set forth therein are not time barred.

### C. **Procedural Default**

The first three claims in the amended petition are: (1) trial counsel provided ineffective assistance when he failed to obtain expert witness testimony regarding the lack of any psychological issues with the alleged victim; (2) trial counsel provided ineffective assistance when he failed to put on expert witness testimony regarding the improper interview techniques employed on the alleged victim; and (3) appellate counsel failed to argue any of the above factual evidence on direct appeal, the Barren Circuit Court failed to appoint counsel to represent Wright on his Rule 11.42 motion, and appointed counsel made mistakes in the collateral attack appeal (DN 10-1 PageID # 52-65). The issue is whether federal review of these three claims is barred due to Wright's procedural omissions in the state courts.

#### 1. *The Procedural Omissions*

Mazza argues that Wright procedurally defaulted these three claims before the Kentucky state courts because they were not raised in Wright's collateral attack brief to the Kentucky Court of Appeals (DN 20 PageID # 110-14). Mazza asserts that federal review of the claims is barred because Wright has not demonstrated cause and prejudice as to each procedurally defaulted claim (*Id.*). In reply, Wright asserts that he is entitled to federal review of his first two claims because he is actually innocent (DN 27 PageID # 642-53) (citing *Schlup v. Delo*, 513 U.S. 298 (1995)).

The undersigned observes that the first two claims in Wright's amended habeas petition were raised in his Rule 11.42 motion (*compare* DN 10-1 PageID # 52-62 *with* DN 20-2 PageID # 221-22). But he did not raise those two claims in his collateral attack brief to the Kentucky Court of Appeals (*compare* DN 10-1 PageID # 52-65 *with* DN 20-2 PageID # 308-13). Wright is now

procedurally barred from attempting to fairly present these two claims in a collateral attack brief to the Kentucky Court of Appeals. *Gross v. Commonwealth*, 648 S.W.2d 853, 857 (Ky. 1983).

The third claim in Wright's amended habeas petition was not raised in his Rule 11.42 motion or in his collateral attack brief to the Kentucky Court of Appeals (*compare* DN 10-1 PageID # 62-65 *with* DN DN 20-2 PageID # 221-22, 308-13). Wright is now procedurally barred from attempting to fairly present his third claim in a Rule 11.42 motion to the Barren County Circuit Court, Ky. R. Crim. P. 11.42(3), and in a collateral attack brief to the Kentucky Court of Appeals. *Gross*, 648 S.W.2d at 857. Consequently, Federal review of the first three claims in Wright's amended habeas petition is barred absent his making a showing of cause for each default and actual prejudice arising from the claimed constitutional error *or* that failure to consider these three claims will result in a "fundamental miscarriage of justice." *See Harris v. Reed*, 489 U.S. 255, 262-64 (1989) (cleaned up); *Murray v. Carrier*, 477 U.S. 478, 485, 495-96 (1986).

### 2. *Cause and Prejudice*

The undersigned will begin with Mazza's suggestion that Wright may be trying to use his third claim to show cause and actual prejudice as to his first and second claims in the amended habeas petition. By way of background, in *Coleman v. Thompson*, the Supreme Court made the unqualified pronouncement that ineffective assistance by counsel during State post-conviction proceedings does not establish "cause" for a procedural default because there is no constitutional right to an attorney in such proceedings. 501 U.S. 722, 752-754 (1991) (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987)). Approximately twenty-five years later, the Supreme Court recognized a narrow equitable exception to the rule in *Coleman* that applies where the State's procedural rules specify that the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance of trial counsel. *Martinez v.*

22

*Ryan*, 566 U.S. 1, 10-16 (2012). Specifically, the Supreme Court explained this narrow equitable exception as follows:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 17. This equitable exception to the rule in *Coleman* applies only if the following requirements are satisfied: (1) the ineffective assistance of trial counsel claim "is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit"; (2) the "cause" for default of the ineffective assistance of trial counsel claim arises out of the absence of appointed counsel or ineffectiveness[18] of appointed counsel in the initial-review collateral proceeding; (3) the state collateral review proceeding was the "initial" review proceeding concerning the ineffective assistance of trial counsel claim; and (4) state law requires the prisoner to raise the ineffective assistance of trial counsel claim in an initial-review collateral proceeding. *Id.* at 14-15, 17-18. Notably, the Supreme Court explicitly indicated this holding "does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* at 16.

The Supreme Court subsequently extended the *Martinez* exception to states where the procedural law does not on its face require that claims of ineffective assistance of trial counsel be raised in an initial-review state collateral proceeding but, by reason of its procedural design and systemic operation, the state's procedural framework makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial

---

18 Ineffective under the two-part test in *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984).

counsel on direct appeal. *Trevino v. Thaler*, 569 U.S. 413, 417, 428, 429 (2013). Thus, the Supreme Court in *Trevino* modified the fourth requirement in *Martinez* to include situations where a state's procedural system effectively denies a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal. *Id.* at 429. Subsequently, the Sixth Circuit held that "[t]he *Martinez/Trevino* exception applies in Kentucky and thus Kentucky prisoners can, under certain circumstances, establish cause for a procedural default of their [ineffective assistance of trial counsel] claims by showing that they lacked effective assistance of counsel at their initial-review collateral proceedings." *Woolbright v. Crews*, 791 F. 3d 628, 636 (6th Cir. 2015).

The "cause" for default of the first two claims in the amended habeas petition does not arise out of the absence of appointed counsel in the initial-review proceeding because Wright included both of them in his Rule 11.42 motion. Rather, it arises out of the appointed counsel's tactical decision not to include them in the collateral attack appellate brief filed with the Kentucky Court of Appeal. *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (discarding weaker arguments on appeal and focusing on those more likely to prevail is a hallmark of effective appellate advocacy). Additionally, the *Martinez/Trevino* exception cannot be utilized to establish "cause" when the default arises out of the ineffectiveness of counsel during an appeal from initial collateral proceedings. *See Martinez*, 566 U.S. at 16. Consequently, the *Martinez/Trevino* exception does not provide the relief that Wright seeks.

### 3. *Fundamental Miscarriage of Justice*

Wright's assertion of actual innocence is equally unavailing (DN 27 PageID # 642-53). To satisfy the fundamental miscarriage of justice standard, Wright must show that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Schlup v. Delo*, 513 U.S. 298, 327-331 (1995); *Murray*

*v. Carrier*, 477 U.S. 478, 485, 496 (1986). To be credible, an actual innocence claim must be substantiated with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Further, Wright must persuade the Court that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. Here, Wright merely puts a favorable spin on evidence presented at trial. Considering the overwhelming evidence of guilt, Wright cannot show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier*, 477 U.S. at 496.

In sum, federal review is barred as to the first three claims in Wright's amended habeas petition because he did not raise them in his collateral attack appeal to the Kentucky Court of Appeals and he has failed to make a showing of cause for each default and actual prejudice arising from the claimed constitutional error *or* that failure to consider these three claims will result in a fundamental miscarriage of justice.

### 4. Certificate of Appealability

In *Slack v. McDaniel*, the Supreme Court established a two-pronged test that is used to determine whether a Certificate of Appealability should issue on a habeas claim denied on procedural grounds. 529 U.S. 473, 484-85 (2000). To satisfy the first prong of the *Slack* test, a petitioner must demonstrate "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Id.* at 484. To satisfy the second prong, a petitioner must show "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[19] *Id.* Notably, the Court need not conduct the two-pronged

---

[19] "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a

inquiry in the order identified or even address both parts if a petitioner makes an insufficient showing on one part.[20]  *Id.* at 485.  For example, if the Court determines a petitioner failed to satisfy the procedural prong, then it need not determine whether the constitutional prong is satisfied.  *Id.*

Reasonable jurists would not find it debatable whether the first three claims in Wright's amended habeas petition should be denied on the above-mentioned procedural grounds. Therefore, a Certificate of Appealability should not issue on the first three claims in the amended habeas petition.

### D.  Ineffective Assistance of Counsel

#### 1.  *Arguments of the Parties*

The fourth claim in Wright's amended habeas petition asserts that trial counsel, Johnny Bell, provided ineffective assistance when he failed to object to the trial judge's improper communication with the jury, and appellate counsel, Julia Pearson, provided ineffective assistance when she failed to raise the issue on direct appeal (DN 10-1 PageID # 52-74).  Mazza contends that adjudication by the Kentucky Court of Appeals was not contrary to, nor an unreasonable determine of, clearly established United States Supreme Court precedent (DN 20 PageID # 114-25).  Wright did not reply to Mazza's contention.

#### 2.  *Applicable Standards*

When the Court conducts a review under either clause of 28 U.S.C. § 2254(d)(1), it must look only to the clearly established precedent of the United States Supreme Court.  *Lockyer v.*

---

reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

[20] "Each component of the § 2253(c) showing is part of a threshold inquiry, and a Court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue of whose answer is more apparent from the record and arguments."  *Id.* at 485.

*Andrade*, 538 U.S. 63, 70-71 (2003).   Here, the clearly established precedent is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny.   To establish ineffective assistance of counsel, a defendant must show deficient performance and resulting prejudice.   *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *Strickland*, 466 U.S. at 687.

The performance inquiry requires "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.   In making this assessment, the Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.   Further, the Court must determine whether, in light of all the circumstances, counsel's challenged conduct falls outside the wide range of professionally competent assistance. *Id.*   In doing so, the Court "should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id.*   Additionally, the Court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The Supreme Court's discussion about resulting prejudice begins with the observation "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.   Thus, under the prejudice inquiry, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*   In the context of a criminal trial, the prejudice inquiry requires the defendant to show there is a reasonable probability that, absent trial counsel's errors, the jury would have had a reasonable doubt respecting guilt. *Id.* at 695.

As the restrictive standard of review set out in § 2254(d)(1) applies to Wright's claim, federal habeas relief may not be granted unless he demonstrates that adjudication of his claim by the Kentucky Court of Appeals "was contrary to, or involved an unreasonable application of," the clearly established precedent in *Strickland*. *See Harrington v. Richter*, 562 U.S. 86, 100-01 (2011) (quoting § 2254(d)(1); *Williams*, 529 U.S. at 412). This is different from what Wright appears to be seeking, a review of the state court record to determine whether he has satisfied his burden under the clearly established precedent in *Strickland*. *See id.* at 101. Stated another way, the issue before the Court is not whether Wright has satisfied both parts of the test in *Strickland*. *See id.* Rather, it is whether the Kentucky Court of Appeal's decision—answering that inquiry in the negative—was "was contrary to, or involved an unreasonable application of," the clearly established precedent in *Strickland*. *See id.* at 100 (quoting 28 U.S.C. § 2254(d)(1)).

### 3. *Discussion*

Following a discussion of the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 694-95 (1984), the Kentucky Court of Appeals provided the following analysis of Wright's two claims of ineffective assistance of counsel:

> On appeal herein, Wright alleges the trial court erred in denying his RCr 11.42 motion because: (1) trial counsel failed to object to the court's improper communication with the jury foreperson outside the presence of the entire jury, and (2) appellate counsel failed to raise the issue of that improper communication on appeal. We will address each argument, in turn.
>
> Wright first argues his trial counsel's failure to object to the court's improper communication with the jury foreperson outside the presence of the entire jury constituted ineffective assistance of counsel. RCr 9.74 mandates:
>
> > No information requested by the jury or any juror after the jury has retired for deliberation shall be given except in open court in the presence of the defendant (unless the defendant is being

tried in absentia) **and the entire jury**, and in the presence of or after reasonable notice to counsel for the parties.

(Emphasis added.)

On direct appeal, the Supreme Court noted "on at least three separate occasions the trial court conversed with the foreperson out of the presence of the rest of the jury. These actions, though done in good faith, were a clear violation of RCr 9.74[.]" *Wright*, 590 S.W.3d at 265. It further held "this error was waived by defense counsel's lack of objection to said discussions" but "reiterate[d] that our trial courts are bound to follow RCr 9.74 and its corresponding case law." *Id.*

For the appeal herein, Wright asserts the trial court's communication with the foreperson outside the presence of the entire jury intentionally or inadvertently coerced the verdict in this case. Although the Supreme Court found that issue to be waived, we may review whether counsel was ineffective in waiving the issue. *Prescott v. Commonwealth*, 572 S.W.3d 913, 922 (Ky. App. 2019) ("[A]n adverse ruling from the Court on direct appeal does not preclude the same claim of error from being considered again as ineffective assistance of counsel.").

It is well established:

> When analyzing whether a trial court has coerced a jury verdict, this Court has explained that the ultimate test of coercion is whether the instruction **actually forces** an agreement on a verdict or whether it merely forces deliberation which results in an agreement. We analyze the **totality** of the circumstances. The time lapse between the alleged coercive comment and the verdict may be relevant as part of the totality of circumstances, though not decisive. [S]tatements which merely impress upon the jury the propriety and importance of coming to an agreement do not rise to the level of reversible error. At the same time, however, it must be remembered that the words and acts of a presiding judge have great weight with juries, and for that reason we have often written that he should at all times be cautious in what he says or does in the presence of the jury.

*Bell v. Commonwealth*, 245 S.W.3d 738, 742-43 (Ky. 2008), *overruled on other grounds by Harp v. Commonwealth*, 266 S.W.3d 813 (Ky. 2008) (emphasis added) (internal quotation marks and citations omitted).

When the Supreme Court considered whether the trial court's *Allen* charges to the entire jury were coercive, it held:

> **There is nothing in either of these statements, or the circumstances surrounding their delivery**, that convinces this Court that the jury was **forced** to reach a verdict. **The trial judge specifically stated no one was trying to twist the jury's arm**, or even that they should deliberate for a specific period of time. **Further, the jury deliberated for a total of four hours, which cannot be considered a coercive factor.** This is an instance where the Allen instructions were given merely to encourage continued deliberations. **We therefore find no error.**

*Wright*, 590 S.W.3d at 264 (emphasis added).

The court's statements to the foreperson outside the presence of the entire jury were made in a like manner and consisted of similar language. Portions of the exchanges between the court and foreperson were lifted from their context in Wright's briefs to make the trial court appear coercive. Examination of the full exchanges clearly shows no coercion. Further, the court brought in and addressed the entire jury immediately after having its exchanges with the foreperson, which in this case mitigated any potentially harmful effects of the improper communication. Our review reveals only one instance – the last exchange between the court and the foreperson – when the court did not also address the entire jury. On that occasion, the foreperson asked the court if it could define the phrase "reasonable doubt," to which the court responded it could not. Additionally, more than an hour passed between when the jury was sent back for deliberations after the second *Allen* charge and when the foreperson emerged to request the court define "reasonable doubt." Our review of the exchanges that violated RCr 9.74 reveals no intentional or inadvertent coercion. Accordingly, Wright has not demonstrated prejudice required to prevail on a claim of ineffective assistance of trial counsel.

Wright's second argument concerns ineffective assistance of appellate counsel. He claims his appellate counsel was ineffective for failing to raise the issue of improper jury communication on direct appeal. For the reasons discussed herein, the improper communication between the court and the jury foreperson did not constitute reversible error. Thus, appellate counsel's failure to include the issue in the direct appeal brief did not rise to the level of

ineffective assistance of appellate counsel.[21]

*Wright II*, 2023 WL 323886, at *3-4.  The above analysis fully comports with the two-part test set forth in *Strickland*.  Consequently, Wright has failed to demonstrate that the Kentucky Court of Appeal's adjudication of his two claims is contrary to or an unreasonable application of the clearly established precedent of the United States Supreme Court set forth in *Strickland*.  28 U.S.C. § 2254(d)(1).  Additionally, Wright has not demonstrated that the Kentucky Court of Appeal's conclusion was based upon "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Therefore, Wright is not entitled to relief on the fourth claim in the amended habeas petition.

### 4.  *Certificate of Appealability*

When the Court rejects a claim on the merits, the petitioner must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Wright has not demonstrated that reasonable jurists would find the above assessment of his fourth claim debatable or wrong.  Therefore, Wright is not entitled to a Certificate of Appealability for his fourth claim in the amended habeas petition.

---

21 The Kentucky Court of Appeals recognized that while a petitioner may bring a *Strickland* claim based on appellate counsel's failure to raise a particular nonfrivolous claim, it is difficult to demonstrate that counsel was incompetent because selecting the claims that have greatest likelihood of success is a hallmark of sound appellate representation. *Wright II* 2023 WL 323886, at *4 (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

## IV.    <u>RECOMMENDATION</u>

For the foregoing reasons, the undersigned **RECOMMENDS** that Wright's habeas petition (DN 1) and amended habeas petition under 28 U.S.C. § 2254 (DN 10) be **DENIED** and **DISMISSED**.    Additionally, the undersigned **DOES NOT RECOMMEND** issuance of a Certificate of Appealability for the four claims set forth in Wright's amended habeas petition.

November 22, 2024

H. Brent Brennenstuhl
United States Magistrate Judge

## V.    <u>NOTICE</u>

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b)(1), the undersigned magistrate judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.    Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.    28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2).    If a party has objections, such objections must be timely filed, or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985).

November 22, 2024

H. Brent Brennenstuhl
United States Magistrate Judge

Copies to:    Preston Wright, *pro se*
                    Counsel of Record

32